IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


STEVEN M. BYERS,

        Petitioner,

v.                                                 CIV 01-219 LH/KBM

TIM LeMASTER, Warden, and
PATRICIA A. MADRID, Attorney General
for the State of New Mexico,

        Respondents.


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Steven Byers' Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254, *Doc. 1,* and Respondents' Answer, *Doc. 10.* Also pending are Petitioner's motions requesting a default judgment, discovery, counsel, and an evidentiary hearing. *Docs. 7, 11, 13-16.*

Because Byers filed this § 2254 action after the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its one-year statute of limitations applies. Pursuant to 28 U.S.C. § 2244(d)(1), the limitations period runs "from the latest" of four possible periods, only two of which are implicated here – the date the conviction became final <u>or</u> the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. Although the State has not raised the issue, I find the petition is untimely and recommend that it be dismissed.

### *Proceedings Before AEDPA Grace Period Expired*

In September 1992, Petitioner entered into a written plea agreement in which he agreed to plead guilty to two property crimes in exchange for the dismissal of an escape charge.  *See Doc. 10, Exh. D.*   The only portion of the written agreement pertaining to the sentence Petitioner would receive provided that the "State will ***recommend*** that the underlying felony charges run concurrent to the time he is currently serving."  *Doc. 12, Exh. B* (emphasis added).

Petitioner pled guilty as required in the agreement and acknowledges that at his April 5, 1993 sentencing hearing, the District Attorney indeed requested concurrent sentences.  *Id.* at 7. When the trial judge indicated that he would impose consecutive sentences, however, Petitioner objected.  *Id.* at 3.  A recess was then taken to allow discussions between defense counsel and the District Attorney.  *Id.; see also Doc. 10, Exh. D* at 2.

According to Byers, during this conference he was persuaded to "accept the sentence." Evidently, the events underlying the escape charge had received a great deal of negative publicity because Byers had just walked out the front door of the county jail.  Byers asserts that the District Attorney stated in those discussions that "Petitioner would be brought back at a later date for re-sentencing in accordance with the plea agreement, once the publicity died-down." *Doc. 12* at 3-4.

The record indicates that on April 27, 1993, after the sentencing hearing but before the judgment and sentence were entered, Petitioner filed a "Motion for Reconsideration of Sentence" and that there was never an order entered on this motion.  *Doc. 10, Exh. T* at 3.  Instead, the trial judge filed written judgment and sentence on May 14, 1993 which provided that "this sentence run consecutively with the sentence that is presently being imposed in Bernalillo County."  *Id., Exh. A* at 2.

2

The record before me does not contain a copy of the motion for reconsideration, although the State did refer to it in briefing before the New Mexico Supreme Court.  It is unclear whether by entering the judgment after the motion, the trial judge actually considered and rejected the motion for reconsideration.  In any event, the motion has no bearing on the limitations issue before me.[1]

Although Petitioner professes that he believed his sentence had been or was going to be corrected, nothing in the record indicates that such an impression was reasonable.  Defendant made no attempt to verify that his sentence was "corrected."   Byers failed to question why he had not been "brought back" for sentencing as allegedly promised or why he had not received notice of an amended judgment within a reasonable time after sentencing.  He did not inquire as to why his 1993 motion for reconsideration had not been decided.  Other than the 1993 motion for reconsideration, neither he nor his attorney initiated any proceedings following the 1993 sentencing hearing.

Thus, Byers' conviction became final years before the April 24, 1996 effective date of AEDPA.  Where, as here, a conviction became final before April 24, 1996, a prisoner had a one-

---

[1]  If Petitioner attempted to attack his sentence collaterally by a motion for reconsideration filed under New Mexico Rules of Civil Procedure, the motion was not "properly filed" in a criminal action and the failure to rule on it would not toll the limitations period.  *Cf. Villanueva v. Williams,* 172 F.3d 880, 1999 WL 84082 (10th Cir. 1999) (unpublished) (state prisoner filed motion for reconsideration of denial of state habeas relief; noting N.M.R.Civ.P. 60 permits relief from final judgment for inadvertence and excusable neglect, held motion for reconsideration is not properly filed and does not toll limitations period because state habeas actions are not characterized as civil action and civil rules are not applicable).

If the motion for reconsideration was filed under N.M.R.Crim.P. 5-801 to "correct" his sentence, the motion would have only tolled the statute ninety days, since such motions are deemed denied if not ruled on by the ninetieth day of filing.  *See Truelove v. Smith,* ___ F.3d ___, 2001 WL 491143 (10th Cir. 3/9/01) (unpublished).  Petitioner does not contend that he initiated state habeas proceedings under N.M.R.Crim.P. 5-802 in filing the motion for reconsideration.

year "judicial grace period," or until April 23, 1997, in which to file a federal habeas petition.  *See Rhine v. Boone,* 182 F.3d 1153, 1154 (10th Cir. 1999), *cert. denied,* 528 U.S. 1084 (2000).  He did not do so.

### Proceedings After AEDPA Grace Period Expired

In October 1999, the warden where Petitioner is incarcerated notified the trial judge that Byers' sentence did not include the "proper parole term," and the judge amended the judgment accordingly that same month.  *Doc. 12, Exhs. E-F.*  Upon receipt of the Amended Judgment and Sentence, Petitioner filed for relief in the state courts in March 2000.  *Doc. 12* at 5.  Proceeding *pro se,* Petitioner contended that in violation of due process, the District Attorney "breached" a promise in the plea agreement to have the sentence run concurrently and breached a promise to "re-sentence" him.  Byers did not seek to withdraw his plea.  Instead, he wanted his sentence amended pursuant to either Rule 5-801 or Rule 5-802 to reflect that the sentence was concurrent to the one apparently due to expire.  *See Doc. 10, Exhs. D-F.*

The tape of the sentencing proceeding had been lost, but the trial judge found the tape was not necessary for his ruling and denied relief on April 10, 2000.[2]  Petitioner appealed the denial of

---

[2]  After taking testimony and hearing argument, he found:

> THAT. . . neither this Court nor the Office of the District Attorney nor Defendant's counsel recall any statements or assurances made to Defendant or evidence that this Court would subsequently reconsider its Judgment and Sentence beyond the statutory time limit;
>
> THAT all evidence available to the Court including but not limited to the signed Plea Agreement, signed Judgement and Sentence and testimony of the attorneys do not support Defendant's arguments and motion;
>
> THAT there is nothing on the record or in the court file that shows that the sentence imposed upon Defendant was illegal; and,

relief under Rule 5-801 to the Court of Appeals, but conceded that relief was time-barred.  *Id.*

*Exh. L.*  He appealed the Rule 5-802 portion by filing for a writ of certiorari to the New Mexico

Supreme Court, which was denied on June 12, 2000.  *See id., Exh. N-Q.*  The state public

defender then entered an appearance on his behalf seeking reconsideration and remand to the

district court with instructions to hold an evidentiary hearing.  The request was denied on

November 3, 2000.  *Id., Exh. U.*  This suit followed.

### The Facts Underlying The Petition Were Known
### Prior To The Expiration of The Grace Period

The factual predicate for all of the grounds raised in his petition – that the plea agreement

entitled him to concurrent sentences and his sentence was not subsequently amended to run

concurrently as allegedly promised – were available to Petitioner him after his sentencing in 1993

and before the expiration of the grace period.  Therefore, § 2244(d)(1)(D) does not provide him

with an accrual date later than the time his conviction became final.  Thus, all of the cognizable

issues in the federal petition are time-barred unless there is a basis for equitable tolling.  *E.g.,*

*Preston v. Gibson,* 234 F.3d 1118, 1120 (10th Cir. 2000).  No such grounds are apparent from the

Petition or the present record.

Although the Tenth Circuit has not addressed in a published opinion whether a district

court can raise the AEDPA statute of limitations defense *sua sponte,* I find it appropriate to do so

and adopt the rationale of the Second Circuit:

---

      THAT the time for reconsideration of Defendant's sentence
has since expired and this Court is without jurisdiction to reconsider
its sentence.

*Doc. 10, Exh. G.*

> We hold first that the district court has the authority to raise a
> petitioner's apparent failure to comply with the AEDPA statute of
> limitation on its own motion.  In so holding, we follow a long line
> of precedent establishing the authority of courts to raise *sua sponte*
> affirmative defenses where the defense implicates values beyond the
> interests of the parties. . . .  If the court chooses to raise *sua sponte*
> the affirmative defense of failure to comply with the AEDPA
> statute of limitation, however, the court must provide the petitioner
> with notice and an opportunity to be heard before dismissing on
> such ground.

*Acosta v. Artuz,* 221 F.3d 117, 122 (2nd Cir. 2000) (citations omitted).  Indeed, in so ruling, the

Second Circuit relied on reasoning set forth by the Tenth Circuit addressing the propriety of *sua*

*sponte* dismissals in the context of habeas actions.[3]

Byers will have the opportunity demonstrate in his objections why he should be entitled to

equitable tolling.  To assure that he has a meaningful opportunity to respond, I will give him more

than the usual time within which to file his objections.  *See Kiser v. Johnson,* 163 F.3d 326, 328-

29 (5th Cir. 1999); *see also Harris v. Champion,* 48 F.3d 1127, 1132 n.4 (10th Cir. 1995) (court

may *sua sponte* raise abuse of writ doctrine so long as Petitioner given notice and adequate

opportunity to respond); *Hines v. United States,* 971 F.2d 506, 507-09 (10th Cir. 1992) (§ 2255

case; court may *sua sponte* raise the defense of procedural default and "must generally afford the

movant an opportunity to respond to the defense").

Wherefore,

---

[3] The opinion cited to both published and unpublished opinions of the Tenth Circuit.  221
F.3d at 122.  I have located an even more recent unpublished opinion from the Tenth Circuit
dealing with the issue of the district court's authority to *sua sponte* raise the statute of limitations
defense to a § 2254 petition.  In *Hare v. Ray,* 232 F.3d 901, 2000 WL 1335428 (10th Cir.
9/15/00) (unpublished and attached), the Tenth Circuit denied a certificate of appealability in §
2254 case where the magistrate judge *sua sponte* raised the timeliness issue and gave opportunity
for petitioner to raise grounds for equitable tolling in objections to the recommended disposition.

**IT IS HEREBY RECOMMENDED THAT** the petition be dismissed as untimely and that Petitioner's other motions be denied.

**IT IS ORDERED THAT** Petitioner will be allowed **thirty (30) days** of receipt of these Proposed Findings and Recommended Disposition in which to file his objections pursuant to 28 U.S.C. § 636(b)(1) and set forth his grounds for equitable tolling, if any.  **The written objections must be filed with the Clerk of the District Court.  If no objections are filed, no appellate review will be allowed.**

UNITED STATES MAGISTRATE JUDGE

7

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

232 F.3d 901 (Table)
2000 CJ C.A.R. 5527
**Unpublished Disposition**
**(Cite as: 232 F.3d 901,  2000 WL 1335428 (10th Cir.(Okla.)))**

NOTICE:   THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA10 Rule 36.3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Tenth Circuit.

**Candy Kay HARE, Petitioner-Appellant,**
**v.**
**Howard RAY, Warden; Attorney General of the State of Oklahoma, Respondents-Appellees.**

**No. 00-6143.**

Sept. 15, 2000.

Before BRORBY, KELLY, and MURPHY, Circuit Judges.

ORDER AND JUDGMENT  [FN*]

FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir.R. 36.3.

MURPHY.

**\*\*1** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a)(2); 10th Cir.R. 34.1(G). The case is therefore ordered submitted without oral argument.

This case is before the court on Candy Kay Hare's *pro se* request for a certificate of appealability ("COA"). Hare seeks a COA so she can appeal the district court's dismissal of her 28 U.S.C. § 2254 petition. *See* 28 U.S.C. § 2253(c)(1)(A) (providing that no appeal may be taken from the denial of a § 2254 petition unless the petitioner first obtains a COA). Hare also seeks to proceed *in forma pauperis* on appeal. Because Hare has not made a substantial showing of the denial of a constitutional right, she is not entitled to a COA and her appeal is dismissed. *See id.* § 2253(c)(2).

Hare was convicted in Oklahoma state court of murder in the first degree and sentenced to life imprisonment. Hare's conviction was affirmed by the Oklahoma Court of Criminal Appeals ("OCCA") on October 31, 1997. Nearly one year later, on October 7, 1998, Hare filed an application for post-conviction relief with the state district court. The application was denied and Hare failed to file a timely appeal. Hare ultimately filed a second

application for post-conviction relief seeking an appeal out of time. The second application was denied on June 22, 1999 and that denial was affirmed by the OCCA on August 26, 1999. Hare did not file the instant § 2254 habeas petition until January 28, 2000.

Hare's habeas petition was referred to a magistrate judge for initial proceedings pursuant to 28 U.S.C. § 636(b)(1)(B). In the report and recommendation ("R & R") prepared by the magistrate judge, the magistrate raised the timeliness of Hare's petition *sua sponte* and recommended that the petition be dismissed because it was filed outside the one-year limitations period set out in 28 U.S.C. § 2244(d). *See* 28 U.S.C. § 2254(d)(1) (providing that the one-year period begins to run on the date petitioner's conviction became final); *Hoggro v. Boone,* 150 F.3d 1223, 1226 & n. 4 (10th Cir.1998) (holding that one-year limitations period is tolled during the period of time petitioner spends properly pursuing state post-conviction relief but is not tolled during the pendency of an untimely appeal from the denial of post-conviction relief). The magistrate judge further concluded that Hare had failed to identify any circumstances that would support an equitable tolling of the limitations period. *See Miller v. Marr,* 141 F.3d 976, 978 (10th Cir.1998).

Hare filed a timely objection to the R & R but failed to demonstrate that her habeas petition was timely or advance any argument as to why the one-year limitations period should be equitably tolled. The R & R was adopted by the district court and Hare's habeas petition was dismissed.

The analysis employed by the magistrate judge to support his conclusion that Hare's

habeas petition was untimely is thoroughly set forth in the R & R. Hare has presented no argument that the magistrate judge miscalculated the one-year period. Nor does Hare present any argument as to why the one-year limitations period should be equitably tolled. [FN1]

> FN1. Hare's COA application contains a conclusory statement, buried in a sentence, that she is actually innocent of the crime of which she was convicted. Even if this court were to consider Hare's argument for the first time on appeal, her unsupported statement asserting her actual innocence is insufficient to support the equitable tolling of the one-year limitations period.

**\*\*2** Before she is entitled to a COA, Hare must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Hare may make this showing by demonstrating the issues raised are debatable among jurists, a court could resolve the issues differently, or that the questions presented deserve further proceedings. *See Slack v. McDaniel,* 120 S.Ct. 1595, 1603-04 (2000). This court has reviewed Hare's application for a COA, her appellate brief, the district court's Order dated March 22, 2000, the R & R, and the entire record on appeal. That review clearly demonstrates the district court's dismissal of Hare's § 2254 petition as untimely is not deserving of further proceedings or subject to a different resolution on appeal. Accordingly, we deny Hare's request for a COA, deny Hare's request to proceed on appeal *in forma pauperis,* and dismiss Hare's appeal.

END OF DOCUMENT